Good afternoon everyone. Good afternoon, Judge Hamilton. Good afternoon. We are here today for oral argument. These are appeal numbers 25-2256 and 25-2268. E. E. V. and M. C. C. G. v. Blanche. We'll begin with oral argument on behalf of the respondent. Thank you, Chief Judge Brennan. May it please the court. Daniel Momolo on behalf of the United States, I respectfully request four minutes of rebuttal time. Very good. In Riley v. Bondi, the Supreme Court reiterated what federal immigration statutes have expressly said for decades. The time to petition this court for review of a final order of removal begins upon issuance of that final order. That mandatory claim processing rule remains unaffected by subsequent withholding only is not subject to equitable tolling and squarely applies to these petitions. This court should accordingly grant the government's motions and deny or dismiss the petitions for review. To start, this court lacks jurisdiction over both petitions. A petitioner may seek review of a reasonable fear determination only as part of a challenge to a final removal order, but neither- Mr. Momolo, excuse me. Did you have anything to do with preparing the briefs on these motions? I did not, Your Honor. So as I understand it, the point you're making now, you agreed in your reply brief, is foreclosed by circuit precedent, correct? Respectfully, Your Honor, I disagree. I do recognize that I believe you're referring to the jurisdictional argument over EEV's statutory and statement order. Yes. You know, this court's subject matter jurisdiction must be secure at all times as this court held in Manhattan. That's not my question. It was first raised in your reply brief and you agreed, I thought, that circuit precedent, and in fact, all circuits have unanimously exercised jurisdiction over such orders. Is that right? Yes. I do think that's correct. Excuse me if I misunderstood the original question. What I would say to that is, yes, I think that's a fair characterization, but I think recently there has been a lot of open questions, especially given the Supreme Court's recent decision in Guzman-Chavez, and if you look at the reasoning from other courts of appeals, whether it's the Ninth Circuit in Castro-Cortez- Your reply brief seemed to suggest that there might be something in Riley that would have us look at this anew, but Riley remanded to the Fourth Circuit. Are you saying that in Riley there shouldn't have been subject matter jurisdiction? Well, I think that the question before the court in Riley was whether the timeline had expired, and I don't think that the parties were briefing jurisdiction over the reinstatement order specifically. I do think that if you look at the Guzman-Chavez opinion, if you look at even, respectfully, Chief Judge Brennan's opinion in FJAP, there's been serious questions, and many courts have expressed skepticism over the jurisdiction of reinstatement orders more generally. I don't think, respectfully, that it's an argument that has been foreclosed. I think that this court must, its subject matter jurisdiction must be secure at all times, and so I do think that if the court wanted to, it could squarely address that and try to resolve an issue that has been percolating in federal courts. Excuse me, if I could interrupt here. If I understand your position correctly, let's forget about the withholding-only proceedings. Let's suppose somebody just is caught up, is found in this country, and the government takes the position that they've illegally reentered such that a prior order of removal was reinstated. Under your position, is there any judicial review available at that point? So in the case of a reinstatement order, so putting aside for a moment, assuming for the sake of this hypothetical that the court does have jurisdiction and chooses to exercise its jurisdiction over the reinstatement order, the question is, well, can they seek judicial review of the reinstatement order? I believe the Supreme Court and Nasrallah explained that the challenges that are available for a final order of removal stemming from reinstatement would essentially be limited to legal or constitutional challenges. So if there's a, I think what you're driving at, Your Honor, if I may, is is there a way to get judicial review of a withholding-only proceeding or a cap protection? That is not my question, Mr. Malone. My question is whether the position you're taking on subject matter jurisdiction and whether reinstatement order is, whether this court can exercise jurisdiction over a reinstatement order. If we cannot, then does a person who is subject to such an order have any avenue of judicial review for a question such as whether they're a citizen, whether they're the person named in the prior order, whether they re-entered the country illegally, foundational questions that would apply to that order? And if so, what is that path? Sure. I think the answer to that question would be no. There would not be judicial review of the reinstatement order if the court foundationally lacked jurisdiction, and I think that is a very straightforward, common-sense principle. You know, in the circumstances where courts have exercised jurisdiction, they have, as Your Honor alluded to, looked at, you know, it's been a very limited type of review. Is this the same person? That's not my point. My point is that if you're correct about our jurisdiction here, then all of those other questions, those other basic questions would also avoid judicial review. Is that correct? And if it's not correct, please tell me how review would be available. Well, again, I guess I would adopt the same refrain that if the court lacked subject matter jurisdiction over the reinstatement order to begin with, there is... That is your position, correct? Correct. Yes. So if your position is correct, then what's the answer to my question? Well, I think respectfully that there wouldn't be judicial review there. Thank you. So, for example, if an individual is picked up for a reinstatement order and it's the wrong person, the genetic trace would indicate, no, this is not person A, this is person B, the reinstatement order wouldn't attempt to be effectuated against that person. That is something that would stay within the agency purview. Is that correct? Exactly, Your Honor. And I think that, you know, Congress made a very deliberate decision in cases of reinstatement orders to vindicate the public interest in ensuring that aliens who illegally re-enter this country are subject to more limited judicial review. I think that's, you know, a very straightforward principle. And yes, as Your Honor alluded to, certainly there is some agency review in that type of situation. But yes, I would agree or concede, depending on how it's being framed, that yes, assuming this court didn't have subject matter jurisdiction, then yes, there would be no review here. The preservation, some of the phrasing is often the where, not the whether. In terms of what is going on after the attempt to effectuate the reinstatement order, is that correct? Where the individual would be placed after withholding proceedings might have occurred versus whether or not they're going to be removed. Correct. And, you know, this is something that the Supreme Court explained in Nasrallah, in its merger analysis. And, you know, yes, and I think maybe, you know, other courts have mentioned this and explained this too. But yes, the fundamental question in a removal order is the whether. And in the case of reinstatement, you know, Congress made a decision to limit judicial review. That isn't a typical Section 240 proceeding in which, you know, an alien would be afforded more comprehensive review. So, yeah, I would agree that your characterization is correct. You may continue. Sure. So, again, you know, I think that, you know, the reinstatement order jurisdiction is a fair way and a straightforward way to resolve this case. Additionally, as we argue in our briefing, you know, this court independently lacks jurisdiction over both petitions because neither petitioner is challenging the final order of removal. The only thing that's being challenged here is a hypothetical, conjectural injury about a future contingent cat or withholding only proceeding or determination. And that's simply insufficient to invoke this court's jurisdiction and this court's review. That would get a lot of traction in a lot of situations. I have a little trouble understanding how it applies in the wake of riot. And I also would have to say maybe you can direct me to other areas of the law where the same request for relief is both late and not yet right, which seems to be your position here. Well, again, I think that respectfully, Your Honor, I think that if there wanted to be a challenge here, the way Congress enacted the statutes and the way courts have interpreted those statutes, there needs to be a fundamental challenge to the final order of removal. There's no independent jurisdiction for a cat only or a withholding only claim. So in the event, again, assuming for the sake of this premise, which, again, we would forcefully dispute, but that this court can exercise or may exercise jurisdiction over the reinstatement order, I think that doesn't resolve the issue that there's no challenge to the final order of removal. And if you look at the Ninth Circuit's recent decision in Navarrete, this is something that was recently considered and the court declined to exercise jurisdiction because although in that case the petitioner styled the challenge as a challenge to the final order of removal, the court recognized that the substantive challenge was nothing more than a challenge to the cat only determination. So if anything, I would actually submit to this court that this case is an a fortiori case from Navarrete because in Navarrete, there was at least a cat denial. Excuse me, I wasn't actually asking about Navarrete, but about Riley. Sure. Were these petitioners seem to be doing exactly what the Supreme Court suggested they should do to cope with the practical problems resulting from Riley? Well, I think a few things are bound up in that question, Your Honor. I would dispute respectfully that they are complying with what Justice Alito described in his Riley opinion. The Riley holding is that the challenge needs to be made within 30 days of the final order of removal. Now, that just simply didn't happen. I don't think anyone is disputing that. That takes us to the equitable tolling rule, but that question, but okay, keep going. Sure. So I guess I would dispute this idea that there has been full compliance with Justice Alito's majority of the court's explanation of how one complies with the holding. The way to comply with the holding is that you file the petition for review within 30 days of the final order of removal. I think all agree that that did not happen. So again, as Your Honor- And wouldn't we have just dismissed it if it had under then existing precedent? Excuse me, sorry? If someone had filed a placeholder like this under our then existing precedent, wouldn't it have just been dismissed? I don't know if that's the case. It would depend. I think if it was a challenge to, again, a contingent sort of determination in a withholding only proceeding or a cat determination and there was no underlying challenge to the final order of removal potentially, but I think that if the petitioner was making a colorable challenge to the final of removal, which is what the Navarrete Court mentioned is required, which I concede is not binding on this court, but I think it's instructive. So yeah, no, I don't necessarily know that that's the case. But to your point, I would just say that there hasn't been compliance and that does bridge into your follow-up question, which is, well, what about the equitable factors and the equitable tolling and those types of arguments? And again, I think I would urge the court to just step back and if you distill the petitioner's argument, the petitioner's argument in this case is essentially that when the Supreme Court announces a rule and it affects the parties before it, there is some sort of implicit reservation for prospective only relief. That is just not simply the way that our justice system works. If you look at the Supreme Court's decision in Harper v. Virginia Department of Taxation, there was an express rebuke of that contention. When the Supreme Court applies a decision to the parties before it, that decision is a binding decision on all open cases on direct review in the federal docket. Oh, sorry, I wasn't sure if there was- Let me build on this. We've got shifting law below us. The Supreme Court starts shifting from jurisdictional language to mandatory claims processing language. So we deal with the sequelae of that. We also are dealing with the fact that, as Judge Kohler has pointed out, when certain petitions, if they had been made in a conditional way, may have been subject to dismissal. There are a group of petitions that will not potentially receive any retroactive fairness here because of a change in the law, correct? I think, again, we'd have to look at each individual case. I recognize that each individual case is different, but as a general matter- Counsel, you're taking a position that applies across the board, correct? To the extent we're saying that the Riley holding applies across the board to all open, pending, and future petitions, yes. Thank you. Yes. So if I may, I would just say that I think that if you look at this, as I was saying, that the argument that there's only prospective-only relief, there needs to be typically, the Supreme Court typically expressly reserves prospective-only relief in cases where it's going to do that. The Riley Court did not do that, and I think that that is a very normal practice that the Supreme Court does. So yes, in this case, could there be situations where there's no form of review or there needs to be dismissal, whether for lack of jurisdiction or for denial for being untimely? Yes, I think that's the case. And I think that even before you get to the equitable tolling question, and if you look at the Holland factors and assess those, again, as we explain in our briefing, we would argue that there is no equitable tolling here. But I think the court may be a more straightforward way to do this, is if you just dial back, as I said, this is a very straightforward proposition that's being announced, and petitioners are contending that this is creating some sort of enormous inequity. And I think to the extent there's any inequity and that there are deserving plaintiffs here, to the extent that that's even the case, that's just not the way that our legal system works. This is the way that judicial decisions... Just a moment, what's been happening here is not necessarily the greatest, smoothest functioning of our legal system, as the relevant doctrines have been evolving. But on this rightness question, that would apply to somebody who came in today, right, and filed a timely petition. They're in these petitioner's positions, they get a reinstatement order, and they want to seek cat relief. If they filed that petition with us today, you would say that's premature, no jurisdiction, right? Yes, that is correct. Again, acknowledging that every case is different as a general matter, yes. Counsel, so let me go back to my Riley question. Those people would be doing exactly what the majority opinion in Riley said should be done, and your response seems to be no jurisdiction on a timely petition that's trying to be a placeholder for a future cat or withholding of removal petition, right? Respectfully, Your Honor, again, not to haggle, but I disagree with that. Please, why? The petitioners have not done what the court in Riley instructed. I'm not asking counsel, I'm not asking about these petitioners. I understand you want to talk about whether Riley's retroactive, I get that. But I'm talking about the position you're taking, if I understand it correctly, is that someone who is today given a reinstatement order and told that you've got 30 days to file a petition for review of that. I know you don't think there's jurisdiction, but let's assume that much. They file a timely petition for review, saying I want to get relief under the convention against torture, and I haven't had a chance yet to file that petition, but I'm going to start promptly. Your position is that that person who is doing, I submit, exactly what the Supreme Again, if there's no challenge to the underlying final order of removal, and it's just based on a future determination on a cat proceeding in the context of reinstatement, then yes, I would agree with that. Okay, so you're running directly counter to Riley then? I don't think it's running directly counter to Riley, respectfully, Your Honor. I think that this question wasn't presented in Riley. The question in Riley was whether or not the 30-day timeline was a jurisdictional rule or a mandatory claim processing rule. That was a much narrower question, and Justice- Do you think they overlooked this one? I don't think they overlooked it. I just don't think that this was the question presented before the court. Do you want to talk at all about equitable tolling? Before we get there, as a court, we're bound by both vertical and horizontal stare decisis. So when FJAP comes to us, we've got to deal with in re stone, and that's the state of the law at juncture. So there's a certain reliance interest that people might have had about the way things looked under in re stone, and then FJAP happens. FJAP is the law only for a certain period of time, and FJAP gets expressly abrogated in Riley because the law has changed. The Supreme Court law has changed, and as a result, the Court of Appeals law, the law, the Fifth Circuit case, the Navarrete, the Ninth Circuit case, it's all changing as a result of this because of these courts having to obey the way the consequences are of the Supreme Court rulings, correct? Yes, I think that's completely accurate, and I think that's, again, this is obviously an issue that has percolated maybe more than others in courts of appeals, but this is kind of part and parcel, in my view, of how judicial decision works within the functioning of our legal system. So I think that even in FJAP, you know, obviously the court set the deadline from the resolution of the cat only proceedings or the withholding only proceedings, but there was a lot of discussion there about how this was an open question, how several federal courts of appeals have disagreed with this analysis, and your Honor's own partial concurrence and partial dissent, you express serious skepticism about parts of the court's analysis. So yes, I think, you know, I think where this is all boiling down to is, you know, the equitable issues, I think they're kind of bound up in two different things. It's one, is there some inherent unfairness about retrospective or retroactive application, and I would contend there's not based on the Supreme Court's decision in Harper, and two, you know, whether the equitable tolling factors even apply to the extent the court wanted to go down that road, and that's in the Holland decision, and, you know, if you look at the administrative removal, you know, all of those factors cut decisively in favor of no equitable tolling being available. I'm not sure if my rebuttal time was reserved. We'll give you rebuttal time. Why don't you get to Judge Hamilton's question concerning equitable tolling? Sure. So, Judge Hamilton, I would just say that, you know, we contend that equitable tolling, if the court wanted to go down that road and complete that analysis under Holland, you know, we would submit that the Holland factors cut decisively in favor of no tolling being available here, whether you look at the fact that it's an unusually emphatic statutory declaration saying that the petition for review must be filed no later than 30 days, admittedly, and just to put that out there, because I know that this has been the subject of the briefing, there's been this argument that, you know, must versus may is not dispositive, you know, sure, but it's a factor, and it's an important factor, and if you look at the other Holland factors, you know, the statutory structure, Congress knew how to provide equitable tolling or extensions of time in other contexts, and the history of administrative removal, which is basically that Congress made a deliberate decision that reinstatements and administrative removal for aggravated felons, you know, there was an interest in vindicating the public interest in illegal reentry and protecting Americans from aggravated felons. So, counsel, if we find that there's no equitable tolling, whether we do it statutorily or we look to Rule 26, aren't we extinguishing, potentially extinguishing constitutional claims, and you're here on a, you want us to summarily dismiss, and we have a, consistent with what Riley set forth, we have basically a placeholder. We don't know what can happen in the cap proceedings and what the claim might be. So, what, how do I know right now that we're not dismissing a claim that is due process, or, and if so, do you think you can extinguish a constitutional claim and any avenue to it? A couple things there. I guess I would say that if the court didn't want to go down that road, I think the jurisdictional pathway articulated in our briefing is a straightforward way to resolve the case that wouldn't involve announcing some sort of general principle or general rule. On the face of this briefing, there is no constitutional allegations or due process violations. There's not even a challenge to the final order of removal, which is the basis for this court's, the only basis for this court's jurisdiction of petitions for review. In the case of administrative removal, you know, the only challenges that are available there are for constitutional and legal questions, you know, but again, that's on the final order of removal. That's not on a contingent cap claim. And again, I'm happy to keep going, but I would like to reserve a couple of minutes for rebuttal if that's possible. Very good. Thank you, counsel. We'll next hear Ms. Goldenberg from you. We're not going to keep you to the latter of the minute. You'll be able to go over. There's no case after this one. So we'll recognize you now for argument on behalf of the petitioner. Petitioners. Thank you, Your Honor. I'd like to start with the jurisdictional arguments that have been addressed so far and then move on to the timeliness argument, equitable tolling, unique circumstances, and so on. But before doing that, I do want to just take a step back and note the stakes here. The government is trying to deprive petitioners and anyone who gets a final order of removal before their withholding only proceedings are complete of any ability to get judicial review of those proceedings. And it's trying to do it in a whole variety of ways. The petitions are untimely. They're not right. There has to be a challenge to removability. Evie should have petitioned from the original removal order that was defunct as soon as she was removed. But that can't be right because Congress was clear that there is judicial review of withholding only determinations. Congress was particularly clear about that with respect to cat determinations, which are determinations about whether someone's going to be subject to torture if they are removed in the way that the government seeks. And this court has been clear in its own precedent that reinstatement orders like Evie's are subject to review as final orders of removal. We're in this new world. Supreme Court is changing the law on us. Other courts are doing other things. Give us your best argument in the new world with this new, both horizontal and vertical started, decisive, how we're to navigate that. Absolutely, Your Honor. Before getting into that, and I think maybe I'll start with the question of whether Evie's reinstatement order is a final order of removal, which is where my friend began and talk about it in the context of that. But I do want to say this court's precedents are only displaced by clear Supreme Court holdings to the contrary. So the fact that there may be some implication or there may be something in a different holding, I think is not enough to displace this court's decisions under starry decisive principles. So we're only in a new world to a certain defined extent, I would say. So to talk about your question, I think through the lens of the first jurisdictional argument, so I think is wrong many times over. And I think Riley makes this extremely clear that the reinstatement order is not a final order of removal. And before the reinstatement order, there was no operative order of removal with respect to Evie. There had been an order of at that point, that old order of removal became defunct. And in fact, there was a decision of this court just a few days ago, and I'm sorry, we didn't get a 28-J hearing about it. We certainly could if you would like, called Velazquez that lays this out, that explains the defunctness of the original order of removal in that circumstance. So if she had reentered the United States lawfully, not a problem at all. She could have reentered the United States lawfully, and that old order of removal would have had nothing to do with it. She was removable because in the reinstatement order, there was a determination that she reentered unlawfully. And I point to Appendix 4 of the government's appendix that says, this is the reinstatement order itself, I have determined that the above-named alien is subject to removal through reinstatement of the prior order. That's a determination of removability. There would not otherwise be removability. And that meets the statutory definition of a final removal order. So a removal order is an order of the administrative officer delegated responsibility for determining removability, concluding that the alien is removable. That's Section 1101A47A. If the old removal order is defunct, and the reinstatement order is a new removal order, are all the same protections available the second time that were available the first time? No, I think Congress has been clear about what protections are and aren't available with respect to reinstatement orders. But just the question is whether it's a final order of removal for purposes of Section 1252, such that it can be the subject of a petition that will give this court jurisdiction. And not only does it meet that statutory definition, but it also meets the definition given in Riley. Riley said that things that affect the validity of an old removal order are final removal orders. And nothing could fit that definition better than the reinstatement order. It affected the validity of the old removal order. It made it valid again when it had not been valid. So the reinstatement order is indeed a final order of removal that can be petitioned from, just as this court's precedents have said in the past. You use the word validity. Unpack that for us. How does a reinstatement order make an original removal order valid? Or invalid? It does it through a sort of legal conceit, I would say. It makes it spring back into being. That's what the statute says. That's what Section 1231 says. When you have the reinstatement order, the old removal order is rejuvenated. And it exists again. But that doesn't change the fact that the reinstatement order is doing something that is very, very critical to removability. You need to have that reinstatement order, or you would not have removability of EEV. So I think that argument doesn't have legs. And I'd like to tackle the government's next jurisdictional argument unless the court doesn't want to. One more thought on that. If we take your description of what's happening in a reinstatement order, we're creating a conflict with the Ninth Circuit in Navarrete and the Fifth Circuit in Lau, correct? No, I don't think that's true at all, Your Honor. I don't. How are those cases distinguishable? Well, in Navarrete, the thing that was being petitioned from was just a random order of the agency. It was not the underlying reinstatement order. Navarrete actually suggests multiple times in the decision to our reading, and we noted this in our response to the 28J letter, that if the petition for review in that case had been from the reinstatement order and not from this other agency order, that that would have been enough to make the petition for review proper and all of that under Section 1252. Lau, I think, just doesn't get into this question. Lau talks about the situation in which there's a mandatory 30-day deadline and it's a claims processing rule, but it doesn't talk about, I think, this particular situation specifically. But if we read Lau with its conclusion that the 30-day, 1252B1's 30-day filing rule is a mandatory claims processing rule, and we read that with Nutraceutical, doesn't that support the government's request? So we're moving, I think, now into equitable tolling? Yeah. Okay. I'm happy to do that. I do want to make sure to lay down a marker since I'm not going to be held directly to my time to talk about the government's other jurisdictional argument because I think it's really important. But happy to talk about equitable tolling, of course. So Nutraceutical is totally distinguishable from this case because it involves Federal Rule of Appellate Procedure 26B1, not Rule 26B2. Rule 26B1 says you, the court, cannot extend the time period ever with respect to certain things like notices of appeal. That's not the part of the rule that's at issue in this case. What's at issue in this case is Rule 26B2, which says you, the court, can extend deadlines for petitions for review of government action where that is authorized by law. But isn't your argument there, then, that because they're specifically authorized by law, the statute doesn't specifically authorize it? We just have to rely on the presumption that statutes are written such that equitable tolling is allowed and they need to be specifically carved out? There needs to be specific language if it's not allowed. So that seems to me to be a bit of a convoluted argument. I don't think so, Your Honor. Rule 26B, before we even get to 1 and 2, says the court can extend time for things. So this is just telling you, you can only extend the time with respect to petitions for review of government action under a specific set of circumstances where there is a specific authorization by law. The presumption in favor of equitable tolling and all the case law around that is law that specifically applies to the statutory provision. And I think because the presumption is so strong, unless the court finds that it's overcome here, which the court should not do, that the presumption in favor of equitable tolling is actually embedded in the statute itself, so that the statute reads as if it says there's a presumption in favor of equitable tolling. Then the question becomes, is equitable tolling satisfied with respect to these petitioners? We think the answer is yes. So all of that is legal authorization. But that would apply to any statute that lays out a timeline, correct? There's not a statute that specifically says equitable tolling is available for this. So your analysis would apply B-2 to any statute? Well, yes. I think that's right. But again, two things would have to happen. First of all, it would have to be a non-jurisdictional time limit, because with respect to a jurisdictional time limit, there would be no equitable tolling. And second of all, the specific petitioners before the court would have to qualify for equitable tolling under the test for equitable tolling, which is a very difficult test requiring diligence and an extraordinary circumstance. And most of the time, that will not be the case. So I don't think it's opening up a big hole, if that's Your Honor's question, in the law to say that all that's happening in Rule 26B-2 is Congress approved the rule, but the rule is acknowledging that the court can usually grant extensions however it wants. Sometimes it can't grant them at all. And in this particular circumstance, it can only grant them sometimes where there's some authorization in the law that is specific to the statute at issue that would allow it to be done. So I think if you look at Rule 26 in its full context like that, Rule 26B-2 and using the presumption in favor of equitable tolling as specific authorization by law makes a lot of sense. I also think that the government's argument with respect to Rule 26B-2 makes a hash out of a lot of law out there. It's been rejected specifically by the D.C. Circuit and Nelson. So it would be creating a circuit split to say that. The government points to the decision in OHA, but the discussion of Rule 26B-2 and that decision was dicta because the court said it was a jurisdictional time limit. So none of that was really that relevant. And if you look at decisions like, say, the Supreme Court's decision in Harrow, that's a petition for review of government action. It went up through the federal circuit and to the Supreme Court. And the Supreme Court couldn't be clearer there. There is a strong presumption in favor of equitable tolling. It is very hard to overcome. And if Rule 26B-2 meant that that presumption didn't apply in a case like Harrow, first of all, the Supreme Court didn't talk about it. But second of all, you'd end up in a world in which Congress would need to say specifically in statutes, and you can have equitable tolling. And that is exactly the opposite of the presumption that Congress has always legislated against, that we know Congress understands, that's in the drafting handbooks that Congress gets. Yes, I'm sorry, Your Honor. Ms. Goldin, can I ask you, can you point us to any statutes that expressly invite equitable tolling of deadlines? I am not sure that I can. I have not done a search of the U.S. code for that phrase. Yeah, I'm not sure that I can. And I think the reason for that is, again, because Congress is assuming, it's this age-old principle, as the Supreme Court put it in Harrow, that equitable the statute, and it's really just a matter of statutory interpretation, that it doesn't want equitable tolling with respect to a particular statute. And it's not giving those indications here, contrary to the government's argument. This is- Can I ask you for a second? You referred to the D.C. Circuit's opinion in Nelson against SEC, I believe. Yes, Your Honor. Which seemed to draw a distinction between, in the application 26b.2, to statutory deadlines versus rule-based deadlines. Do you think that is the correct line? And if not, what's the correct approach? I don't think that that line is necessarily correct. I think the only question is, is there a specific authorization by law that's somewhere out there? And again, I think all the law about the presumption in favor of equitable tolling, is that specific authorization with respect to a rule? Maybe you could imagine some other affirmative law. But I think the question comes down to, is there something in the law that tells you that it's okay to go ahead and extend the deadline? And again, if you look at cases like Harrow, you know that it's okay here and that the Supreme Court thinks that it is. You wanted a marker on the second jurisdictional argument. I did. Thank you, Your Honor. Okay. So, if I could just say one last word, sorry about equitable tolling. I'd say none of the indications that the presumption in favor of equitable tolling is overcome are here. This is a very short, simple, straightforward time limit. It is directed to the litigant, not to the court. It is directed to a litigant in a situation in which litigants often proceed pro se. There are no exceptions. There is no specially emphatic language, contrary to my friend's submission. In fact, the government's brief in this case acknowledges that the word shall and the word must are equivalent to each other. And in fact, you can rephrase any time limit to say either one. And the Supreme Court has over and over again said that equitable tolling is appropriate where you have language like shall or even shall be forever barred, which is pretty emphatic. So, an emphatic statement by Congress is something like saying the time limit multiple times, prescribing consequences for missing the time limit. We don't have any of that here. So, I think it's pretty clear that the presumption in favor of equitable tolling here has not been overcome and that these petitions are timely on that basis. And also that these specific petitioners, as I was suggesting before, qualify for equitable tolling having been diligent and having faced an extraordinary circumstance. Both of them petitioned within 30 days of the Riley decision. So, to jump back over to jurisdiction and leave unique circumstances slightly in the past for the moment, although maybe we'll come back to that too. So, the government argues that there needs to be a challenge to removability in every case. Our petitioners are out of luck. They just cannot challenge their withholding only determination. We don't agree that we're not going to make any challenge to removability here. We aren't required at this stage of the case to have formulated all our arguments and to come forward with them. The only reason that happened in Navarette is that in Navarette, the petitioner was trying to amend the petition for the reason I gave before. The petitioner there had not, in fact, petitioned from the final order of removal, and so the court undertook an analysis of whether amendment was appropriate. It looked at futility to see if, you know, so whether there was a valid claim there. But in normal circumstances, we don't have to come forward with our merits arguments now, and we may well have arguments that challenge removability in both of these cases, in fact. But I still think the government's underlying submission that you need to have a challenge to removability in every case is wrong. The government relies on Justice Thomas's concurrence in Riley and on Navarette. The problem that Justice Thomas was identifying in Riley is exactly the same problem that I was just describing with respect to Navarette. There, Justice Thomas was saying there wasn't a petition for review from a final order of removal in this case, actually, and so someone should take a look at that. But here we have petitions from final orders of removal, and there's just no statutory basis. There's no fundamental change in immigration law that you need these challenges to removability every time. It would have massive implications, not only for people in the position of these petitioners, but for anybody coming up through a more typical IJBIA path and getting a final order of removal at the end of that process. And we know Congress wanted there to be review of withholding-only proceedings. We know that from the zipper clause in Section 1252 that says everything gets wrapped up together once you do the right thing and appeal essentially the right order. We know that from provisions about cap proceedings that say you get review of cap proceedings as part of review of a final removal order, and it would be irrational to proceed any other way. It would cause people to raise borderline removability arguments that this court would have to grapple with, and it would be an enormous sink on this court's resources and time and on the time and resources of the government and other litigants to proceed in that way. And it wouldn't make sense because whether someone can raise a challenge to their removability and whether someone can argue that the government is going to send them to a country where they're going to be tortured and the government has come to that decision incorrectly aren't necessarily closely related to each other as a substantive matter. Congress wrapped them all up into one proceeding for efficiency and so that this court wouldn't have to hear multiple petitions for review in the same immigration case. But there's no sense to the idea that you somehow have to raise a challenge to removability in order to then raise the other challenge with respect to withholding proceedings. What Congress is telling us is as a matter of practicality we want you to appeal once. We're telling you what order to appeal. It's actually an order that may happen earlier than your withholding only proceedings, and once you've done that all these other issues get wrapped in together and you can challenge whichever ones that you want. And Riley, I think as was being suggested before, accounted for this sort of unusual situation where the Supreme Court has decided that it's an earlier order that you challenge rather than the last order that you challenge by saying that courts can hold petitions like this one in advance until the withholding only proceedings are complete and that's exactly what we would suggest happen here. Wouldn't that just sap all the expedition out of the appeal? I mean we've got one of the clients has been here 10 and a half years after. The whole idea of an expedited appeal would be gone and wasn't that one of the emphases in Riley? Well I think there is some clear intent on the part of Congress in these statutes to move things along. You have to petition within 30 days, you have to petition early rather than later, things like that, but there's also clear intent by Congress that you get full review and that cuts against the kind of expedition that your honor is talking about. Well that's exactly what we're trying to get at through normal matters of statutory interpretation and normal analysis of case law and the argument that at least that I'm hearing is that there hasn't been major changes. But I look at the law and I look at what Supreme Court did in Riley and all these other appellate courts, the law seems to be changing pretty quickly. I mean again I think the Supreme Court has made some specific changes and there's no question that Riley is a major change. That's why it counts as a extraordinary circumstance for equitable tolling purposes right? I totally agree with that but I think the Supreme Court was pushing lower courts to even greater changes in a fundamental area of immigration law like this one and as was suggested I think in some of the discussion before it's really weird that Riley would have just said well you should hold petitions for final removal orders in abeyance until all the withholding proceedings are completed if what the Supreme Court actually had in mind was this draconian new system in which you were required right at the beginning to challenge your removability or you were out of court forever even if again you were going to be tortured and the government has made a terrible mistake about that which would benefit strongly from judicial review. And again I think you know the idea that people are going to be forced to kind of gin up these challenges to removability obviously people are bound by rule 11 so they'll have to be plausible at least to some degree but I think a lot of them will probably end up being kind of borderline and I just can't. One was successful here I mean the the facts present that on one of the petitioners there's a sufficient basis to persuade people that's why they I mean I'm not saying that in every in no case will there be a challenge to removability in some cases I think there can be and as I suggested before we are thinking about such challenges here and we certainly haven't ruled them out but I still think it would push the law in a sort of in a direction where people are making challenges just for the sake of making the challenge challenges that they might not otherwise have made and that that is not what Congress meant when it said we want this to be efficient we want to package all the arguments together into one proceeding you petition once you get to raise stuff about your petition sorry about your final order for removal stuff about your withholding only proceedings you get to raise all of that that's the zipper clause we're putting it all together in one proceeding. We've talked a lot about vertical stare decisis but before we would get to equitable tolling if there's a mandatory claims processing rule we've our own courts got cases in Ray Wade, Netzer in which if it's a processing rule we don't get to equitable tolling so we've got to rule your way we've got challenges from within our own law don't we? Well I think part of the issue here your honor quite frankly is that the term mandatory claims processing rule is being used in a lot of different ways in the law it's kind of like the bad old days of jurisdiction before the Supreme Court and ARBA came and told everybody what it really means for something to be jurisdictional it's very reminiscent of that even the Supreme Court itself right has said things like well we reserve whether there are equitable limitations on mandatory claims processing rules and mandatory claims processing rules are very mandatory the word mandatory can be used to mean shall or must or it can be used to mean that category of cases that I was discussing before where Congress has provided clear statutory indications that it does not want the presumption in favor of equitable tolling to apply. I agree that there's a category of cases where the word shall and the word must are used where Congress has provided those indications not this case but I agree that those cases exist so I think you have no doubt that Riley was talking about a mandatory claims processing well I don't think Riley necessarily held there was a mandatory claims processing rule there's a part at the beginning of Riley where it sort of says in passing set up the choice they were deciding whether it's one or the other yes I agree with that but there's no way that Riley ruled out equitable tolling that wasn't part of the question presented it was not before the court and Justice Sotomayor's dissent says I think equitable tolling is going to be available here now and the majority doesn't react to that or try to knock it back that's the genesis of a lot of this discussion so I think you can't but I thought that's my point exactly which is the fact that the words mandatory claims processing rule are used does not indicate that equitable tolling is not available it's a loose way of talking about either language that's just kind of mandatory such that if you don't raise an equitable tolling challenge it has to be followed because it says shall or cases where really there is no equitable tolling because you walk through the test I was talking about before and you see well actually Congress already provided a lot of exceptions and it really hit the limit really hard multiple times and this is a rule that's directed to the court not the litigant that's a category of quote-unquote mandatory claims processing rules where you wouldn't get equitable tolling but the label itself I don't actually think is very useful because it's getting used all different kinds of ways in case law and I think Riley is actually an example of that and again I don't mean to harp on the Supreme Court's decision in Harrow but I do find it very instructive and I urge the court to look at it that decision just very clearly without talking about this sort of extra confusing possible category of mandatory claims processing rules says a non-jurisdictional timing rule is subject to a strong presumption in favor of equitable tolling that's hard to overcome period and it does not suggest that there's some other extra category out there where somehow equitable tolling is barred it wants you to run through the test the BACRA test or that my friend the other side refers to a different case but the test of all the factors and so again I think what was said in Riley about mandatory the fact that the language here says must none of that is dispositive of the equitable tolling question if I could ask you a quick question about the statutes implementing the convention against torture do they have specific provisions about judicial review yes they do so the the provisions I'm thinking of are 8 U.S.C. section 1252 a4 which says a provision petition for review is the sole and exclusive means for judicial review of any cause or claim under the cat and then a non-codified but enacted statutory provision which is found in a note following 8 U.S.C. 1231 that says there's judicial review of cat claims quote as part of review of a final order of removal pursuant to the provision that we're talking about in this case 8 U.S.C. 1252 and then there's also a provision that says cat orders can't be reviewed in district courts even via habeas corpus they have to be reviewed in the courts of appeals so all of that is telling you that congress wants there to be review of these cat determinations in fact that's probably the only thing that's consistent with our international treaty obligations under the cat which are very salient those are law but congress is channeling all this into a single proceeding in the courts of appeals where it can be decided I wanted to talk just for a minute if I could really just if that's okay about unique circumstances doctrine and then I'm also happy to answer any questions court has about venue or anything else we haven't gotten into but I do want to just mention unique circumstances doctrine because it's an alternative to equitable tolling applies I don't think you have to reach it but if you think that equitable tolling doesn't apply I would urge you to reach it and I don't think that you have to look any further than your own decision in sing which makes clear that where decisions of this court lead a petitioner astray about when to file in this court that that lateness is can be equitably excused if their equitable circumstances provide for it and sing related to the same time limitation at issue in this case the 30-day time limitation under section 1252 sing doesn't mention unique circumstances does it it does not but I think that is the best way to read it because it is consistent with the supreme court's unique circumstances law it sounds more in um in estoppel almost than it does in uh in tolling I wouldn't think of it as a tolling kind of circumstance but before Riley this court's precedent told petitioners that they should do exactly what they did and it would be deeply unfair to penalize them for following this court's instructions that applied to them and all petitioners like them I think if you're in a district court it may be that even though there's a district court decision that you like that tells you that you don't have to file yet district court decisions aren't binding on anyone so it may be that you would have to go and ask do I have to file and only if you're told no would you be able to invoke the unique circumstances doctrine but this court's decisions are binding on everyone and so the fact that the petitioners here didn't come to this court and say do we have to do what this court's binding precedents require I think shouldn't make any difference to the unique circumstances analysis again it's this court that said you don't have to file anything yet and it's this court where the petitioners were going to be required to file something so I think again the equities here are very very strong and it would be really extremely unfair under saying other under other unique circumstances cases to try to force petitioners to somehow divine that the law was going to change or do something that this court's precedents would have forbidden it it's not a sensible system to set up all petitioners petitioners only who relied on stone or a subset of petitioners that relied on so it is an equitable doctrine and so I think that you could have a case-by-case equitable analysis to some degree like you could imagine a situation for instance where a particular petitioner didn't it's not that they were relying on this court's precedents they just made a mistake of some kind or something like that that might be a circumstance where maybe the kinds of fairness considerations I'm talking about wouldn't come into play but other than that I think relying on this court's own precedent that says you know if these people who mostly proceed pro se had gone to a lawyer and said do I need to file a petition for review right now the answer would have been clear under this court's precedents no you don't and in fact if you do it's going to be probably you know not considered because you're withholding only proceedings haven't happened yet and that's that's how it's supposed to work and again in that circumstance especially with petitioners like this who are almost always operating without lawyers especially at the very early parts of their removal proceedings I think it's just it doesn't make any sense to say that they could somehow have it in them to do something different than what this court was instructing at the time I'm happy to answer any questions about any other topic if the court would like stay up here as long as you want but thank you Ms. Goldenberg. Thank you. Mr. Mamolo let's go back to you for rebuttal argument four minutes please. Thank you your honor. Just a couple of things that I want to touch on. There was some reference from my friend on the other side about the stakes of this. You know I think the stakes of this are admittedly very important. I think that there has been some conflation throughout this proceeding about that what's going on here is similar to what would go on at a section 240 proceeding. Congress made a deliberate choice with reinstatement orders and with final administrative removal orders to provide forms of abbreviated review and you know I think that makes sense to vindicate the strong public interest in effectuating the efficient removal of aggravated felons and people that illegally re-enter this country. As the Supreme Court said in Enkin, the continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings of our federal immigration statutes. So I think that is also an important interest to vindicate as well. Just jumping here to some other points there was some discussion of Navarrete and the merger analysis and how that relates to Nasrallah. So I think this is important. So there was a talk about well do petitioners have to raise some sort of conjectural challenge or some you know pro forma challenge to removability. Well as the Navarrete court explained you can't do that. There needs to be a colorable claim and on the face of these petitions there is no colorable claim. They're not challenging even when pressed. Petitioners have not articulated any sort of challenge to and it's not it's not removability to be clear. It's the final order of removal. Those are those are two different things and even assuming that there is judicial review here in the case of a reinstatement the only the only reviewability here is whether this is the same person whether that person illegally reentered the country and and you know whether there was a prior order order of removal. Those are the only assuming there's any legal basis to challenge these that order of removal that's the only one. And similarly in the case of MCCG you know there's no there's no dispute that she was be reviewing in a challenge to a final order of removal and again that bridging that discussion into the zipper clause. So the zipper clause is only applicable when there's a when there's a review of a challenge to a final order of removal. The statutory note that was read I think we should just clarify that. It says nothing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the convention or this section or any other determination made with respect to the application of the policy set forth in subsection a except as part of the review of a final order of removal. So the zipper clause does not operate in in some sort of separate fashion than a final order of removal and so absent a challenge to a final order of removal there is no zipper clause invocation that can be made to review these claims. I want to talk about nutraceutical very briefly because there was some discussion about that. You know there's no there's no distinction between federal rules and federal statutes under you know the rules and under the rules enabling act congress reviews rules that are enacted in the federal rules of civil procedure. You know this idea that rule 26b doesn't override the inherent presumption of equitable tolling you know that would render rule 26b a dead letter. Either congress I mean congress would either have to expressly disclaim equitable tolling which would render rule 26b you know it would render it meaningless. So just wanted to touch on that and you know I know I'm out of time so respectfully we'd ask that the court grant the government's motions and either dismiss these petitions for lack of jurisdiction deny that or deny them as untimely. Thank you Mr. Mimolo. Thank you Goldenberg. The case will be taken under advisement. Court will be in recess.